## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2016, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles R. Ellis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 30, 2016 <br><br> Court of Appeals Case No. <br> 34A04-1511-CR-1843 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable William C. Menges, Jr., Judge <br><br> Trial Court Cause No. <br> 34D01-1505-F2-499 |

**Najam, Judge.**

# Statement of the Case

Charles R. Ellis appeals his convictions for dealing in a narcotic drug, as a Level 2 felony; dealing in methamphetamine, as a Level 4 felony; neglect of a dependent, as a Level 5 felony; possession of methamphetamine, as a Level 6 felony; and maintaining a common nuisance, as a Level 6 felony. He raises three issues on appeal, which we consolidate and restate as whether the trial court abused its discretion when it admitted certain evidence at trial. We affirm.

# Facts and Procedural History

On the evening of May 26, 2015, Officers Shane Melton, Adam Martin, and Charlie Fourkiller of the Kokomo Police Department were involved with undercover work in association with a drug task force. The officers had met behind a business in Kokomo to set up some plans for an investigation. Officer Gibson, who was patrolling on his horse nearby, saw Jeremiah Floyd and Christina Muncey in a truck, and he alerted Officer Melton and the other officers that Floyd, who had an active warrant for his arrest, was driving toward them. Officer Martin stopped the truck Floyd was driving, and Officer Melton, who had had interactions with Floyd in the past, approached the truck and read Floyd his *Miranda* warnings.

Floyd admitted to Officer Melton that he had a bag containing drugs on his person, and Floyd retrieved it from his underwear. The officers found more drugs during a pat down search of Floyd. Floyd told Officer Melton that he

was coming from Ellis' house, and he stated that if the police were going to go to Ellis' house, they should be careful because there were a bunch of people and suspected guns there, and "there was more drugs there and there was more money." Tr. at 85.

[4] During the approximately thirty minutes while Floyd was stopped, officers were sent to Ellis' house to conduct surveillance. Floyd told Officer Melton that Ellis had drugs at his house and that Floyd had dropped or lost two or three grams of drugs at Ellis' house, or else they had been stolen from him. Floyd also told Officer Melton that there "was a lot more drugs" at Ellis' house. *Id.* at 87. The police arrested Floyd and Muncey.

[5] The police had been tracking Ellis through a GPS monitoring company for the past four months.[1] The police obtained a warrant, signed at 10:14 p.m. that night, to search Ellis' home at 3272 West 300 South in Kokomo. When the police, including Officer Melton, arrived at Ellis' house, people were leaving the premises in vehicles. When police served the warrant, Ellis, his minor daughter A., Steve Hilligoss, and Thomas Stout were in the house. The officers found no illegal substances when they searched the house, and they then began to search the property on which the house was located.

[6] During the search of the property, Officer Melton was in contact with Doug Hoover, the person responsible for monitoring Ellis by GPS. Hoover informed

---

[1] The record does not disclose the reason the police were monitoring Ellis by GPS.

Officer Melton that there had been a lot of activity along a tree line or wood line of the property. Officer Melton went to the area indicated by the GPS data and saw a Pringles can in a pile of tree limbs and leaves. Officer Melton picked up the Pringles can and discovered that it had a false bottom which concealed baggies of heroin and methamphetamine.

[7] The State charged Ellis with Count I, dealing in a narcotic drug as a Level 2 felony; Count II, possession of a narcotic drug as a Level 3 felony; Count III, dealing in methamphetamine as a Level 4 felony; Count IV, neglect of a dependent as a Level 5 felony; Count V, dealing in a schedule III controlled substance as a Level 6 felony; Count VI, possession of methamphetamine as a Level 6 felony; and Count VII, maintaining a common nuisance as a Level 6 felony. At trial, Floyd testified that he and Muncey had both been living at Ellis' house and that he had used heroin and methamphetamine at Ellis' home earlier in the day on May 26. He testified that, a couple of days before May 26, Ellis had given him $2,500 to go to Indianapolis to buy heroin. Floyd testified that he bought four ounces of heroin and took it back to Ellis' house where they divided the heroin using scales in Ellis' basement. Floyd testified that Ellis planned to sell or trade his part of the heroin rather than use it himself.

[8] The State offered into evidence the Pringles can with the false bottom and the contents found therein, including the heroin and methamphetamine, and the trial court admitted all of this evidence after Ellis' counsel affirmatively expressed no objections. The State also offered recordings and transcripts of recordings of telephone conversations Ellis had conducted from jail while

awaiting trial in which he had made various references to illegal drugs. The recordings were played for the jury, and the transcripts were published to the jury. Ellis' counsel affirmatively stated that he had no objection to each of the transcripts as the trial court admitted them into evidence. Ellis' counsel did object to the admission of four of the recordings, and those objections were overruled.

[9] The jury found Ellis not guilty on Count V, dealing in a schedule III controlled substance, and guilty on all remaining charges. The trial court entered judgment and sentence accordingly.[2] This appeal ensued.

## Discussion and Decision

[10] Ellis maintains that the trial court abused its discretion when it admitted the evidence obtained from the search of his property. In particular, Ellis contends that the search warrant was obtained based on a false statement and that the search was beyond the scope of the warrant. He also contends that the trial court abused its discretion when it admitted into evidence the transcripts of his telephone conversations from jail because the court did not give a limiting jury instruction. However, Ellis raises those arguments for the first time on appeal. Therefore, those arguments are waived. Moreover, he has failed to show that the admission of the challenged evidence constituted fundamental error.

---

[2] The trial court merged Count II, possession of a narcotic drug, as a Level 3 felony, with Count I, dealing in a narcotic drug, as a Level 2 felony.

It is well-established that we generally will not address an argument that was not raised in the trial court and is raised for the first time on appeal.

> [A] trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Accordingly, as a general rule, a party may not present an argument or issue on appeal unless the party raised that argument or issue before the trial court. *Marshall v. State*, 621 N.E.2d 308, 314 (Ind. 1993). In such circumstances the argument is waived. *Id*.

*Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Here, Ellis admits that he did not object to the admission of any of the evidence obtained as a result of the search, and he did not request that a limiting instruction accompany any of the transcripts of the recordings of his telephone conversations from jail. Therefore, he has waived our consideration of his arguments on appeal.

Moreover, we cannot agree with Ellis' cursory allegation that the admission of the evidence at issue was fundamental error. As this court has routinely stated, merely calling an error fundamental does not make it so. *See, e.g.*, *Taylor v. State*, 614 N.E.2d 944, 947 (Ind. Ct. App. 1993), *trans. denied*. That is especially true where, as here, the refrain is not accompanied by cogent argument or citation to authority. *Id.* Rather, in order to be fundamental, the error must be so prejudicial to the rights of the defendant that he could not have received a fair trial. *Id.* We have also characterized fundamental error as error that constitutes a clear, blatant violation of basic and elementary principles, and that causes or could cause substantial harm. *Id.*

[13]     Ellis has provided no cogent argument as to how any potential error in the admission of the evidence violated basic principles of due process such that he was denied a fair trial, and we will not attempt to develop such arguments for him. *Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*. Furthermore, our supreme court has held that the fundamental error exception to waiver does not apply in situations such as this, where a party expressly said "no objection" to the admission of the evidence. *Haliburton v. State*, 1 N.E.3d 670, 679 (Ind. 2013). In such a situation, the trial judge has no duty to *sua sponte* second-guess the party's decision not to object. *Id.* Accordingly, we reject Ellis' claim of fundamental error.

[14]     In any event, and waiver notwithstanding, there is no evidence that the admission of the evidence obtained as a result of the search was fundamental error. While Ellis contends that the probable cause affidavit upon which the search warrant was based contained a "false statement," namely, that Floyd had stated he had three more grams of heroin at the Ellis residence, the affidavit contains sufficient additional information to support a warrant to search Ellis' house. *See Lundquist v. State*, 834 N.E.2d 1061, 1071 (Ind. Ct. App. 2005). And Ellis' contention that the search warrant only allowed the police to search his house, not his surrounding property where the drugs were found, is without merit. A warrant authorizing the search of a residence also authorizes a search of the yard and outbuildings of the residence. *Sowers v. State*, 724 N.E.2d 588, 590-91 (Ind. 2000). Finally, even if admission of the transcripts without a limiting instruction was error, the error, if any, was harmless because "the

conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

[15] Because Ellis waived his arguments on appeal and failed to make a showing of fundamental error, we affirm his convictions.

[16] Affirmed.

Robb, J., and Crone, J., concur.