## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 16 2018, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrius Lynte Brooks, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 16, 2018 <br><br> Court of Appeals Case No. 48A02-1707-CR-1527 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1510-F2-1712 |

**Najam, Judge.**

# Statement of the Case

Andrius Lynte Brooks appeals his sentence for kidnapping, as a Level 2 felony. He raises two issues for our review, which we restate as follows:

1. Whether the trial court committed fundamental error when it took judicial notice of prior trial proceedings when it sentenced Brooks.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts and Procedural History

On October 12, 2015, at around 2:30 a.m., Thirea Brown woke up to a loud banging on her door. She called and sent a text message to her boyfriend, Dayquan Swain, and asked him to come to her apartment because she believed someone was trying to kick down the front door. Brooks and his brother, Brycin, entered Brown's apartment. The men were dressed in all black and they wore masks. The men ransacked her apartment, and they yelled at her and asked her where the drugs and money were. They repeatedly told her they were going to kill her.

The men forced Brown out of her apartment and into their car at gunpoint. They covered Brown's face with a towel and put her on the floorboards in the backseat of the vehicle. Approximately fifteen minutes later, they stopped the vehicle. The men covered Brown's head with a pillowcase and moved her to

the trunk of the vehicle and then continued to drive around town. While she was in the trunk, Brown could hear the men call Swain. She heard the men demand twenty thousand dollars from Swain for her release. She was also able to hear them repeatedly threaten to kill her if Swain did not bring the money. At one point during the morning, Brooks and Brycin drove to the residence of Karlie Walters. At some point later, the two men left the residence with Brown still in the trunk of the vehicle.

[5] After he had received the call and text message from Brown, Swain called the police. Officers with the Anderson Police Department responded to the call and arrived at Brown's apartment. Swain told the police officers that he had received phone calls from an individual using Brown's phone. The individual demanded both money and drugs. During the course of the investigation, police officers obtained information that there was a suspect vehicle parked at Walters' residence.

[6] After they had arrived, officers found Howard Jones, Walters' boyfriend, at Walters' residence. Jones admitted to the officers that he had played a role in the offense. He told the officers that Brooks and Brycin had met Jones at Walters' residence earlier that morning. Jones further informed the officers that he could hear an individual in the trunk of the car that Brooks and Brycin had driven.

[7] When Brooks and Brycin later returned to Walters' residence, Jones told them that he had been identified by police officers and that they needed to drop

Brown off. Brooks and Brycin drove the vehicle with Brown in the trunk, and Jones followed in another car. When they reached a rural area, the men released Brown. The men had kept Brown in the trunk of the vehicle for approximately twelve hours.

[8] Detective Clifford Cole with the Anderson Police Department had been driving that afternoon when he passed a car that he believed contained Brooks and Brycin. Detective Cole turned his vehicle around and followed the vehicle. Detective Cole radioed Detective Chris Frazier, who told him to stay on the vehicle because they had information that Brown had just been released. At approximately 2:35 p.m., shortly after the men had released Brown, Detective Cole initiated a felony stop of the vehicle and arrested Brooks and Brycin.

[9] On October 15, 2015, the State charged Brooks with kidnapping, as a Level 2 felony; burglary with deadly weapon, as a Level 2 felony; criminal confinement with intent to obtain ransom, as a Level 2 felony; robbery, as a Level 3 felony; criminal confinement, as a Level 3 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and a sentencing enhancement for the use of a firearm in the commission of an offense. The trial court held a jury trial on January 11-17, 2017, but it ended in a mistrial. The trial court scheduled a second jury trial to begin on April 24, but Brooks pleaded guilty to one count of kidnapping, as a Level 2 felony, on the morning prior to the start of the trial. On the same day, the trial court accepted Brooks' guilty plea and entered judgment of conviction accordingly.

[10] The trial court held a sentencing hearing on June 5. During the sentencing hearing, the State moved to admit exhibits from the jury trial as evidence. After the State moved to admit several exhibits, it stated that its "intent is to also ask that the court take judicial notice of the trial in this case that previously ended in a mistrial." Tr. Vol. IV at 242. In response, the trial court asked if there was any reason not to do so. Brooks responded: "No objection, Judge." *Id*. The trial court then stated: "All right. The court will take judicial notice of the prior testimony then." *Id*. Later, the court clarified its prior statement and said: "I earlier said that I was gonna [sic] take judicial notice of the earlier testimony in the case. I should properly say I'm taking judicial [notice] of the entire evidentiary record that's been developed in the case, including the exhibits[.]" *Id*. at 244. Brooks did not object.

[11] During the sentencing hearing, the trial court identified as mitigating factors the fact that Brooks pleaded guilty, that he expressed remorse, and that, at twenty-four years of age, Brooks is relatively young. The trial court found as aggravating circumstances the fact that Brooks had previously been convicted of robbery and battery, that the victim was held for an extended period of time beyond that which was necessary to constitute the elements of the offense, and that it was a multi-person conspiracy.[1] The court sentenced Brooks to twenty-four years in the Department of Correction, with twenty years executed and four years suspended to probation. This appeal ensued.

---

[1] The trial court found that the offense was "fairly complicated and involved an arrangement involving at least three (3) persons actively participating as co-conspirators[.]" Tr. Vol. V at 11.

# Discussion and Decision

## *Issue One: Judicial Notice of Prior Proceedings*

[12] Brooks contends that the trial court erred when it took judicial notice of his prior trial proceedings that ultimately ended in a mistrial during the sentencing hearing. Specifically, Brooks asserts that "[i]t was fundamental error for the Court to take judicial notice of all prior proceedings related to the charged acts and consider those things when imposing a sentence for [Brooks]." Appellant's Br. at 11. Brooks acknowledges that he did not make a timely objection when the trial court took judicial notice of the proceedings. However, he asserts that the error rose to the level of fundamental error because the trial court "assuredly relied on [the record] in fashioning a sentencing for [Brooks] and in doing so Brooks was deprived due process." *Id.* at 13.

[13] "The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default precluding consideration of the issue on appeal." *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). That doctrine allows consideration of issues waived on appeal "only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). However, the fundamental error doctrine is not available to appellants who stated at trial that they have no objection. "'The appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and

thereafter in this Court claim such admission to be erroneous.'" *Id*. at 679 (quoting *Harrison v. State*, 281 N.E.2d 98, 100 (Ind. 1972)).

[14] During the sentencing hearing, the State moved to admit exhibits from the jury trial as evidence. The State informed the court that its "intent is to also ask that the court take judicial notice of the trial in this case that previously ended in a mistrial." Tr. Vol. IV at 242. In response, the trial court asked if there was any reason not to do so. Brooks responded: "No objection, Judge." *Id*. The trial court then took judicial notice of the exhibits. Later, the trial court clarified its statement and took judicial notice of the entire evidentiary record.

[15] On appeal, Brooks contends that "the State only entered as evidence certain transcripts of evidence presented at trial and witness testimony, not the entire record." Appellant's Br. at 13. However, it is clear from the record that the State asked the court to take judicial notice of the entire trial record, not just certain exhibits. And, in response, Brooks expressly declared that he had no objection to the State's request. Because Brooks specifically stated that he did not object, the doctrine of fundamental error is not available to him on appeal. *Halliburton*, 1 N.E.3d at 679 (Ind. 2013).

### *Issue Two: Inappropriateness of Sentence*

[16] Brooks also contends that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in

light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[17] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the

defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] Here, the trial court identified the following mitigating factors when it imposed Brooks' sentence: Brooks pleaded guilty, he expressed remorse, and he is relatively young. The trial court identified the following aggravating circumstances: Brooks' criminal history, which includes a felony conviction for robbery and a felony conviction for battery; the victim was held for an extended period of time, and that the offense was a multi-person conspiracy. The sentencing range for a Level 2 felony is ten years to thirty years, with an advisory sentence of seventeen and one-half years. Ind. Code § 35-50-2-4.5. Accordingly, the trial court sentenced Brooks to twenty-four years, with four years suspended to probation.

[19] Brooks asserts that his sentence is inappropriate in light of the nature of offense because it is "well beyond the advisory sentence[.]" Appellant's Br. at 10. However, we agree with the trial court that the offense was "brutal" and the actions Brooks took were "far beyond that which is necessary to constitute the element of the offense." Tr. Vol. V at 9, 11. Brooks, along with his brother, broke into Brown's home in the early hours of the morning, ransacked her apartment to look for drugs and money, forced her out of her home at gunpoint, held her in the trunk of a car for twelve hours, and threatened to kill her repeatedly. Even though Brown was not physically harmed during the offense, her psychological harm is such that she now fears being alone, she has a fear of

strangers, and she no longer trusts people. We cannot say that Brooks' sentence is inappropriate in light of the nature of the offense.

[20] Brooks further asserts that his sentence is inappropriate in light of his character. He contends that he only had one prior felony conviction at the time of sentencing, that he had recently obtained his GED while incarcerated, that he had been a regular drug user for many years, that he accepted responsibility and showed remorse, and that he apologized to those around him. But the presentence investigation shows that Brooks has two prior felony convictions for violent offenses. Those include one conviction for robbery, as a Class B felony, and one conviction for battery, as a Class C felony. Despite the fact that Brooks was only twenty-two years of age when he committed the instant offense, he had already been convicted of two prior, violent felonies. Moreover, Brooks was on probation for his prior convictions when he committed the current offense. In sum, Brooks' criminal history reflects his poor character. We hold that Brooks' sentence is not inappropriate. Accordingly, we affirm his sentence.

[21] Affirmed.

Mathias, J., and Barnes, J., concur.