Vincent H. BUTLER, Sr., Appellant,

v.

STATE of Indiana, Appellee.

No. 10S00–9307–CR–830.

Supreme Court of Indiana.

March 16, 1995.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Office of the Atty. Gen., Indianapolis, for appellee.

## ON DIRECT APPEAL

DeBRULER, Justice.

Appellant was found guilty in the Clark County Circuit Court of Voluntary Manslaughter [1] and Murder [2] in a jury trial. The trial court sentenced appellant to thirty years on the Voluntary Manslaughter conviction and sixty years on the Murder conviction. The sentences are to be served consecutively for a total of ninety years. This is a direct appeal. Ind. Appellate Rule 4(A)(7).

A jury found appellant guilty of murder for killing Pam Agee and guilty of voluntary manslaughter for killing Leta Dains. Appellant claims that his convictions should be reversed and a new trial granted because the trial court erred in:

---

1. IND.CODE ANN. § 35–42–1–3 (West Supp.1994).

2. IND.CODE ANN § 35–42–1–1 (West Supp.1994). Sec. 1. A person who: (1) knowingly or intentionally kills another human being....

(1) failing to sustain defense counsel's objections to the introduction of photographs of the slain victims and a videotape of the crime scene;

(2) allowing a testifying detective to characterize Dains' wounds as "defensive wounds"; and

(3) accepting the jury's verdicts of Murder for killing Agee and Voluntary Manslaughter for killing Dains.

## Facts

Appellant and Leta Dains had been involved for about eight years. In the course of breaking up with Dains, appellant suspected that Dains was seeing one Pamela Agee. On the evening of November 7, 1992, Dains and Agee were at a bar in Louisville together. Appellant was alone at the same bar and spoke with Dains. In the early morning hours of November 8, 1992, he arrived at Dains' house. He noticed Pamela Agee's car parked in front of the house. Appellant looked inside the car, spied a letter addressed to Dains, and entered the car. There he discovered other romantic notes addressed to Dains, at least one of which was signed by Agee. Carrying a box containing two pastry knives, he then entered Dains' home. After hearing noises from Dains' bedroom, he entered it, turned the light on, and found Agee lying with Dains. Agee sat up in bed and began to argue with appellant. He stabbed both of them with one of his knives. Meanwhile, Dains' daughter overheard the struggle and vainly tried to open the bedroom door. When the door finally opened, Agee slumped into the hallway, bleeding from her wounds. The daughter ran to her room where, in a short while, appellant appeared and told her that he would not hurt her and that she should go to her mother who was lying in the yard across the street.

Allen Fowler, Dains' neighbor, found Dains collapsed and bleeding at his doorstep. As Mr. Fowler attempted to resuscitate her, appellant stood only a few feet away. Appellant then picked up the knife and walked to his car. By the time the police arrived, Dains had died of her wounds. Agee died on the way to the hospital. The autopsy reports showed that Agee had been stabbed fifteen times and Dains had been stabbed eleven times.

Appellant was arrested on the day of the deaths, and at the time said to police: "Wouldn't you do what I did if you found your girlfriend ... with another woman in bed?" At his home, the police found a number of blood soaked garments and a large kitchen knife.

## Admissibility of Photographs and Videotape

Appellant claims that the trial court's admission of photographs of the cadavers of Dains and Agee and a videotape of the crime scene where the two were found was error. During the case in chief, the court admitted four photographs of the body of Dains as found in the Fowler yard. The court also admitted seven photographs of the body of Dains lying face up and face down on a stainless steel table at the morgue before autopsy. The photos showed separate stab wounds to the upper torso in the front and the back as well as wounds to the arm and hand and one in the pubic area. The court admitted four photographs of the body of Agee lying face up and face down on a stainless steel table at the morgue before autopsy. The photos showed separate stab wounds to the upper torso in the front and back. The trial court also admitted a videotape of the crime scene, which was played for the jury. The trial court admitted the photographs and the videotape over defense counsel's objections. On appeal, appellant argues that because the cause of death of neither victim was at issue, the only other possible purpose in introducing the photographs was to inflame the emotions of the jurors; thus, the photographs should not have been admitted. Restated in terms of the Indiana Rules of Evidence which became effective after the trial of this case, the arguments are that (1) the exhibits were irrelevant, hence inadmissible under Ind. Evidence Rules 401 and 402, and (2) the exhibits' relevance was substantially outweighed by the danger of prejudice, hence inadmissible under Ind. Evidence Rule 403.

This trial proceeded upon a plea of not guilty to the several charges. At trial, defense counsel made an offer to stipulate

that appellant had killed the two victims with a knife and said in opening statement that the two women had died as a result of appellant's using a knife on them. At trial, there is no rule limiting the facts in issue when one party unilaterally concedes or offers to stipulate that a fact be taken as proved. Stipulations by the both parties may have that effect when approved by the court conducting the trial. Absent such stipulations, evidence of facts in issue by reason of the charge and the plea of not guilty remains admissible. *Hawkins v. State* (1941), 219 Ind. 116, 37 N.E.2d 79; *Brown v. State* (1983), Ind., 448 N.E.2d 10; *Perigo v. State* (1989), Ind., 541 N.E.2d 936. Therefore, defense counsel's concessions in his opening statement and in his objections to these exhibits do not support appellant's claim of error.

The exhibits themselves have considerable relevance and probative value. Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of guilt more probable or less probable. Evid.R. 401. In a homicide case, the identity of the alleged victim and the assailant, the injury to the alleged victim and its source, the death of the alleged victim and its cause, and the physical surroundings in which the injury and death occurred, would all be facts of consequence in the determination of guilt of the accused. The photographs and videotape challenged by appellant were relevant circumstantial evidence of such facts as these.

■ Standing alone, however, relevance does not dictate admissibility. When relevant evidence carries with it an unwarranted prejudicial effect, and its probative value is substantially outweighed by such prejudicial effect, the evidence is inadmissible, despite its relevance. *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, *reh'g denied, cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978); Evid.R. 403.

■ To support this claim of error, appellant cites various Indiana cases in which gruesome photographic evidence was admitted to prove the victim's cause of death. See, e.g., *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899, *reh'g denied.* The Kief-

er case is particularly central to appellant's claim. In *Kiefer*, the State offered several autopsy photographs into evidence. Among the photographs offered were two taken after the doctor began the autopsy. On appeal they were deemed so "gruesome and shocking" as to be inadmissible. One picture depicted "the hands of a doctor and nurse with instruments, inside the deceased's chest." *Kiefer*, 239 Ind. at 111, 153 N.E.2d at 902. The other depicted the deceased's "nude body, lying face up on a slab and showing all of the knife wounds, plus additional incisions made in the body by the doctor in performing the autopsy." *Kiefer*, 239 Ind. at 111–12, 153 N.E.2d at 902. The court held that these photographs were inadmissible because the photographs

> were not in any way necessary to establish the *corpus delicti*. They did not show the position of the parties to the crime nor correctly show the wounds of the victim or the cause of her death. They did not "shed light on any issue" or enlighten the jury on any fact in issue, but served only to arouse passion and prejudice.

*Id.* at 117, 153 N.E.2d. at 905. Thus, as the court in *Loy v. State* (1982), Ind., 436 N.E.2d 1125, would later note, whether a post-autopsy photograph will be admitted is contingent upon its

> potential for displaying more than the state of the victim's body at the time it was discovered. Such a display may impute the handiwork of the physician to the accused assailant and thereby render the defendant responsible in the minds of the jurors for the cuts, incisions, and indignity of an autopsy.

*Loy,* 436 N.E.2d at 1128. Unlike the photographs found inadmissible in *Kiefer,* however, the photographs in the present case did correctly show the victims' wounds, did establish the *corpus delicti,* and probably did aid the jury in determining appellant's state of mind when he killed each of the two victims. Most important, the photographs in the present case did not show the bodies altered in any way by the doctor who per-

formed the autopsy.[3] The photographs admitted into evidence in the present case were taken at the crime scene or before the autopsy itself was performed. The videotape showed the crime scene not long after the police first found Dains and Agee and there is no claim that it did not provide the jury with an accurate image of that place at that time. *Williams v. State* (1979), 271 Ind. 476, 393 N.E.2d 183. In addition, although the exhibits undoubtedly stirred the jury, the rejection by the jury of the murder charge in the death of Dains supports the conclusion that these exhibits did not cause the jury to lose its ability to dispassionately and critically view the evidence and apply the law. *Kiefer* and similar cases do not at all sustain the conclusion that the trial court was in error in determining that the probative value of these exhibits was not outweighed by any unwarranted prejudicial effect which they may have carried. Because the probative value of the photographs and the videotape was not outweighed by their tendency to inflame the jury's emotions, there was no error in the trial court's admission of the photographs and videotape.

### Testifying Officer's Characterization of "Defensive Wounds"

Appellant claims that the trial court erred in allowing Detective Maynard Marsh to refer to several of Dains' wounds to her forearm depicted in a photograph as "typical of a defense wound...." Defense counsel immediately objected and the court sustained the objection. Marsh almost immediately repeated the same characterization. Defense counsel again objected and was sustained. In objecting to the photographs, counsel referred to these several statements by Marsh and moved for a mistrial. The motion was denied.

 The trial court judge did sustain defense objections to these statements of Marsh when made, however, and instructed the jurors before trial to disregard any stricken testimony. Following Marsh's testimony, Dr. Frances Masser, the pathologist

who performed the autopsies on both victims and a qualified expert, characterized the same wounds as "defensive wounds" later in the trial. Recalling the decision in *Hopkins v. State* (1991), Ind., 582 N.E.2d 345, *reh'g denied,* in which we held that there was no error in allowing a testifying expert to characterize a victim's wounds as "defensive wounds," there is no error here. Misconduct by the prosecution in presenting its case is grounds for mistrial only if such misconduct results in subjecting the defendant to grave peril of conviction to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Here the repetitions by Marsh were confined to a short period of time and each repetition was met with a court reprimand. The subject matter content of this improperly repetitious testimony came properly before the jury in the opinion testimony of the pathologist. In light of these considerations, we conclude that the improper characterization by Marsh of the wounds had little if any persuasive effect on the jury's decision. The misconduct of the witness caused no grave peril to appellant, and consequently there was no error.

### Consistency of the Verdicts

Appellant claims that because the jury found him guilty of murder for killing Agee, but only guilty of voluntary manslaughter for killing Dains when he was charged with two counts of first degree murder for both killings, the verdicts are fatally inconsistent and require reversal. More specifically, appellant contends that because he admitted to killing both victims at the same time and in the same manner and believes that the evidence was insufficient to support murder convictions for both killings, the jury should have found him guilty of two counts of voluntary manslaughter. We do not, however, believe that the jury's verdicts are so inconsistent as to require the strong medicine of reversal.

---

**3.** As Detective Marsh noted in his testimony, a tube was inserted through an incision on the left side of Agee's body by the staff of Clark County Memorial Hospital. The incision itself is not visible in any of the photographs. Moreover, one viewing the photographs for the first time would likely assume that the tube was merely part of the background, if one noticed it at all.

 As we have stated in the past, this court will "review findings and verdicts to determine whether they are consistent; *however, perfect logical consistency is not demanded and only extremely contradictory and irreconcilable verdicts warrant corrective action by this Court.*" *Hoskins v. State* (1990), Ind., 563 N.E.2d 571, 577 (emphasis added). The jury is the trier of fact and may attach whatever weight and credibility to the evidence as it believes to be warranted. *Hicks v. State* (1981), Ind., 426 N.E.2d 411, *vacated on other grounds, Hicks v. State* (1988), Ind., 525 N.E.2d 316. When the testimony contains two different versions of a story, the jurors may believe whichever version they choose. *Wallace v. State* (1986), Ind., 492 N.E.2d 24.

 In the present case, the trial court gave the jury the instructions for both murder and voluntary manslaughter. The jury was therefore called upon to decide appellant's state of mind during each killing. As appellant's brief correctly notes, we were confronted with a similar set of facts in *Wilson v. State* (1989), Ind., 533 N.E.2d 114, (per curiam). In *Wilson,* the jury found appellant guilty of murder for killing one victim, guilty of voluntary manslaughter for killing another, and guilty of attempted voluntary manslaughter for shooting still another. On appeal, he too argued that the verdicts reached were fatally inconsistent because the shootings occurred at the same time. This Court, however, found that under the facts of that case "the jury was well within its right *to determine that a different state of mind existed as to the shooting of Brown and the other two victims.*" *Id.* at 116 (emphasis added).

Similarly, the jury in the present case could have reasonably inferred from the evidence at trial that appellant's state of mind when stabbing Dains should be mitigated by heat of passion, but not so his state of mind when stabbing Agee. There was conflicting testimony concerning his knowledge of Agee and Dains' relationship before the killings. One witness, Donna McConnell, testified that she saw appellant silently watching Dains and Agee at a bar earlier that night, while appellant testified that he was at a different

bar. Appellant also testified that he and Dains were trying to improve their strained relationship. Therefore, the jury could have believed both McConnell's testimony concerning appellant's whereabouts on the night of killing and appellant's testimony concerning his feelings toward Dains and concluded that he planned to kill Agee, and in carrying out this plan, confronted with the reality and immediacy of his rejection by Dains, killed Dains under sudden heat.

While the jury's conclusions may not be inescapable, they are hardly illogical or irreconcilable given the evidence presented at trial. That the jury may have believed part of appellant's testimony does not entail that the jury must believe all of it. Thus, we find that the verdicts are not fatally inconsistent and find no error in the trial court's acceptance of the jury's verdicts.

### Conclusion

Accordingly, the convictions and sentences are affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.