## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 09 2015, 9:57 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Kurt R. Earnst
Rachel E. Doty
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Paul D. Stucker,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 9, 2015

Court of Appeals Cause No.
46A05-1403-CR-117

Appeal from the LaPorte Superior Court
Cause No. 46D02-1303-MR-84

The Honorable Richard R. Stalbrink, Judge

**Barnes, Judge.**

# Case Summary

Paul Stucker appeals his conviction and sentence for murder. We affirm.

# Issues

The issues before us are:

      I.     whether the trial court properly admitted photographs of the victim's burned corpse;

      II.    whether there is sufficient evidence to support Stucker's conviction; and

      III.   whether Stucker's forty-five-year sentence is inappropriate.

# Facts

The evidence most favorable to the conviction is that, in October 1983, Stucker and Johnny Hodge were both inmates at the Indiana State Prison ("the Prison") in Michigan City. Hodge was the leader of the Gangster Disciple gang within the Prison, which trafficked in drugs. Stucker was a member of the Aryan Brotherhood gang. Stucker owed a large drug debt to Hodge. At some point, Hodge struck Stucker across the face during a confrontation about the debt. After being struck in the face, Stucker told a fellow inmate, Kenneth

McDonald,[1] that he was not going to pay the drug debt and that instead he "was going to do something to Mr. Hodge before Mr. Hodge did something to him." Tr. p. 425.

[4] Stucker developed a plan to light Hodge on fire using a liquid chemical called Naptha, which also is known as camp stove fuel or "white gas." *Id.* at 520. Naptha liquid is highly flammable and volatile. In 1983, the Prison inmates used Naptha in a variety of prison shops and retrieved it from a fifty-five gallon drum in the shop area. Inmates were not supposed to remove Naptha from the shop area, but they often did so surreptitiously in bottles without detection by prison guards and stored the fluid in lighters.

[5] Over the course of one or two weeks, Stucker and several associates smuggled about four gallons of Naptha out of the shop area and transported it to McDonald's cell. There, the Naptha was transferred to a bucket McDonald used for the fish tanks he was allowed to keep in his cell. Stucker and the leader of the Aryan Brotherhood gang threatened to kill McDonald as a "race traitor" if he did not cooperate in the plan to light Hodge on fire. *Id.* at 430.

---

[1] McDonald was incarcerated at the time for arson.

[6] On October 19, 1983, Stucker directed McDonald to take the bucket of Naptha up to Hodge's cell at 9:00 p.m., after Hodge had been locked in for the night. McDonald did so as Stucker followed behind him. Stucker was carrying with him a cigarette lighter and a "wick" that he had fashioned out of toilet paper soaked in Naptha. *Id.* at 436. When Stucker and McDonald neared Hodge's cell, they saw another inmate, Don Allen, standing outside the cell. Allen, who was the leader of a rival gang to the Gangster Disciples, was having an argument with Hodge. After seeing Allen, Stucker told McDonald to "hold on." *Id.* at 437. Stucker and McDonald waited until Allen started to walk away from Hodge's cell in the opposite direction, then approached Hodge.

[7] McDonald put the bucket of Naptha down outside Hodge's cell and proceeded to walk away in the direction Allen was walking. After McDonald did so, Allen turned around, passed McDonald, and walked back towards Hodge's cell. McDonald did not turn around to see what happened next. However, within seconds of putting down the bucket, McDonald heard a "whoosh" sound and Hodge yelling, "These n*****s are burning me up." *Id.* at 440. McDonald then looked back and saw intense, massive flames coming from Hodge's cell. Hodge could not escape his cell, and he burned to death.

[8] Prison officials investigated Allen, McDonald, and Stucker for Hodge's death. It appears that, as a result of this investigation, Allen and Stucker both were implicated in the incident and both received three years of disciplinary

segregation within the Prison.[2]  However, because of inconsistencies in witness testimony, the State did not attempt to prosecute anyone for Hodge's death at that time.

[9]     In 2007, an Indiana State Police detective received new information regarding Hodge's murder that led him to re-open and re-investigate the case.  At some point, a confidential informant ("CI") for the State Police revealed that Stucker had confessed to murdering Hodge.  Specifically, the CI reported that Stucker said "he burned a man alive at Michigan City state prison" by pouring "white gas" on him and lighting him on fire with a Zippo lighter.  *Id.* at 679-80.  Subsequently, the State Police arranged for the CI to have a recorded conversation with Stucker.  In that conversation, Stucker said that he had managed to smuggle out about 3.5 gallons of a "highly flammable" material, by putting a little bit at a time in small bottles.  Ex. LL, p. 2.  Stucker also said he "just f***ing dumped it in his f***ing face," that he "took care of it," and that the person he killed was "[t]he Godfather . . . [t]he top man" of the "GD."  *Id.* at p. 3.  Stucker also bragged that investigators had been unable to prove what

---

[2] We say "appears" because this information, with respect to Allen, comes from a Prison document in the appendix that was not admitted at trial.  Although the State has not moved to strike this part of the appendix, we remind counsel for Stucker that an appendix may not contain material not presented to the trial court.  *In re Contempt of Wabash Valley Hosp.*, 827 N.E.2d 50, 56 n.6 (Ind. Ct. App. 2005).  As for Stucker, he told an informant, "they gave me three years in the hole, did two with good time."  Ex. LL, p. 3.

he did, noting the absence of his fingerprints on a lighter and a bucket that were found and that a ski mask that was found was not his.

[10] In 2013, the State charged Stucker with murder. Stucker presented notice that he was going to claim self-defense. At trial, McDonald testified at length against Stucker. The State also introduced, over objection, several photographs depicting Hodge's charred corpse. The jury convicted Stucker as charged. The trial court sentenced Stucker to a term of forty-five years, which represented a five-year enhancement over the presumptive sentence for murder that existed in 1983. Stucker now appeals.

# Analysis

## I. Admission of Photographs

[11] Stucker first contends the trial court erred in permitting the State to introduce gruesome photographs of Hodge's corpse. He argues that there was no real dispute about Hodge's identity or the cause of his death and also notes that he offered to stipulate as to the cause of death. Thus, Stucker claims it was unnecessary to show these photographs to the jury.

[12] We review a trial court's ruling on the admissibility of evidence only for an abuse of discretion. *Halliburton v. State*, 1 N.E.3d 670, 675 (Ind. 2013). "'An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.'" *Id.* (quoting *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011)). Even if they are gory and revolting, photographs depicting a crime scene and a homicide victim's body are

admissible so long as they are relevant and competent aids to the jury. *Id.* at 676. Although gruesome photographs have the potential to inflame the passions of a jury, the introduction of such photographs is permissible "'as long as they are relevant to some material issue or show scenes that a witness could describe orally.'" *Id.* (quoting *Amburgey v. State*, 696 N.E.2d 44, 45 (Ind. 1998)). As our supreme court has observed, proving a criminal case "cannot be done sometimes without presenting disagreeable evidence. Revolting crimes generate revolting evidence." *Perigo v. State*, 541 N.E.2d 936, 939-40 (Ind. 1989).

[13]     It also is well-settled in Indiana that a murder defendant's offer to stipulate to a victim's cause of death does not prevent the State from introducing gory photographs of the victim. *See Halliburton*, 1 N.E.3d at 677; *Butler v. State*, 647 N.E.2d 631, 634 (Ind. 1995); *Perigo*, 541 N.E.2d 936 at 940. "A party may refuse to stipulate to any facts. An offer to stipulate does not affect the trial court's consideration of the admissibility of evidence." *Perigo*, 541 N.E.2d at 940.

> "In a homicide case, the identity of the alleged victim and the assailant, the injury to the alleged victim and its source, the death of the alleged victim and its cause, and the physical surroundings in which the injury and death occurred, would all be facts of consequence in the determination of guilt of the accused."

*Halliburton*, 1 N.E.3d at 677 (quoting *Butler*, 647 N.E.2d at 634).

[14]     Here, the State was not limited in its presentation of evidence simply because Stucker offered to stipulate to the cause and manner of Hodge's death. The

manner in which Hodge died was relevant to the case, as were his surroundings at the time of death, and so pictures depicting those circumstances were admissible. Certainly, pictures of a burned corpse are unpleasant to look at, but this was a heinous crime. There is no claim here that Hodge's body was manipulated by a pathologist or medical examiner, which may affect admissibility of a gruesome photograph. *See id.* Moreover, the manner in which Hodge died was particularly relevant here, given Stucker's claim of self-defense. The proportionality of force used in response to a threat is highly relevant in evaluating a self-defense claim. *See McKinney v. State*, 873 N.E.2d 630, 643 (Ind. Ct. App. 2007), *trans. denied*. Allowing the jurors to actually see Hodge's burned body was relevant in assessing whether Stucker acted in self-defense. We see no abuse of discretion in the trial court's admission of these photographs.

## II. Sufficiency of the Evidence

[15] Next, Stucker argues there is insufficient evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We view the evidence—even if conflicting—and all reasonable inferences drawn from it in a light most favorable to the conviction and affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

### A. Identity

Stucker presents a number of claims as to why there is insufficient evidence to identify him as Hodge's killer. He challenges McDonald's veracity, noting that some prison witnesses apparently identified him as the person who actually threw the Naptha on Hodge and suggesting McDonald downplayed his involvement in the murder. He also contends Allen was the person actually responsible for Hodge's death, noting his animosity towards Hodge. He claims the lax security and violent nature of the Prison at the time of Hodge's death leaves open the possibility that any number of inmates could have murdered him. Finally, he notes the lack of any forensic evidence tying Stucker to the crime, such as fingerprint or DNA evidence.

These arguments are clear requests for us to reweigh the evidence or judge witness credibility, which we cannot and will not do. McDonald testified at length about Stucker's plan to burn Hodge alive because he did not want to pay a drug debt to Hodge. It was exclusively within the jury's province to determine McDonald's credibility. McDonald testified that he did not actually see Stucker throw the Naptha on Hodge or light him on fire, and Stucker suggests that this leaves open the possibility that Allen did so instead. Regardless, even if Allen was the one who actually ignited the fire, such action was entirely in keeping with Stucker's plan and his carrying out of that plan by gathering Naptha, making a wick, and taking the Naptha, wick, and a lighter to Hodge's cell when Hodge was locked in it. As for the lack of forensic evidence directly tying Stucker to the crime scene, "[i]n reviewing sufficiency claims, we

look at what evidence *was* presented to the jury, not at what evidence was *not* presented." *Meehan v. State*, 7 N.E.3d 255, 259 (Ind. 2014).

[18] Most importantly, however, Stucker himself confessed to the CI that he killed Hodge by lighting him on fire. In fact, judging by the recorded conversation between Stucker and the CI, it might be more accurate to say that Stucker *bragged* about burning Hodge alive. Statements made by an accused to a third party that confess to or clearly imply the accused's guilt are direct evidence of guilt. *Thompson v. State*, 728 N.E.2d 155, 158-59 (Ind. 2000). In both his opening brief and his reply brief, Stucker wholly fails to mention his statements to the CI. Given those statements and McDonald's testimony, there clearly is sufficient evidence to identify Stucker as Hodge's murderer.

### B. Self-Defense

[19] Stucker also contends that, even if he did kill Hodge, he did so in self-defense. In order to prevail upon a self-defense claim when deadly force is used, a defendant must show that he: "(1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Wilson v. State*, 770 N.E.2d 799,

800 (Ind. 2002); see also Ind. Code § 35-41-3-2.[3] Proof of a "reasonable" fear of death or great bodily harm under the self-defense statute requires both a subjective belief by the defendant that deadly force was necessary to prevent serious bodily injury or death and that such belief was objectively reasonable under the circumstances. *Washington v. State*, 997 N.E.2d 342, 349 (Ind. 2013). If a defendant claims self-defense and there is some support for it in the evidence, the State has the burden of negating at least one of these elements. *Wilson*, 770 N.E.2d at 800. If a defendant is convicted despite claiming self-defense, we will reverse only if no reasonable person could say that the State negated self-defense beyond a reasonable doubt. *Id.* at 800-01. In reviewing rejection of a self-defense claim, our standard of review is the same as for any sufficiency claim: we will not reweigh the evidence or judge witness credibility. *Id.* at 801.

[20] Stucker notes the evidence indicating that in 1983, the Prison was an ultra-violent, anarchic, prisoner-run facility. Indeed, McDonald testified that he was more frightened being incarcerated at the Prison at that time than he was

---

[3] The language of the self-defense statute was the same in relevant aspects at the time of Hodge's murder as it is now. *See Hinkle v. State*, 471 N.E.2d 1088, 1089 (Ind. 1984).

serving as a soldier during the Vietnam War. Based on this evidence, Stucker claims he acted reasonably in pre-emptively killing Hodge in order to prevent his own serious bodily injury or death that supposedly was sure to follow after Hodge had slapped him in the face.

[21] Essentially, what Stucker is asking us to do is place a judicial stamp of approval upon so-called prison "justice" and vigilantism. We will not do so. There is no evidence that when Stucker lit Hodge on fire that he was, at that moment, in the midst of a violent confrontation with Hodge. We would not deny that prisoners may have a right to defend themselves if they find themselves in the middle of a fight with another inmate. Here, however, Stucker planned Hodge's murder in detail and went to great lengths over a period of time to carry it out. And, that plan was precipitated by Stucker's refusal to pay a debt owed to Hodge for both parties' engagement in illegal activity. In short, even if Stucker subjectively believed that he was in imminent danger of death or serious bodily injury and, thus, had to kill Hodge to avoid such danger, we refuse to say that such belief was objectively reasonable or that the jury was required to find such belief objectively reasonable. There is sufficient evidence in the record to rebut Stucker's self-defense claim.

### III. Sentence

[22] Stucker's final argument is that his forty-five-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. In 1983, the presumptive sentence for murder was forty years, with a minimum sentence of thirty years and a maximum sentence of sixty years. *See*

*Mullens v. State*, 456 N.E.2d 411, 413 (Ind. 1983) (citing I.C. § 35-50-2-3 (1979)).[4] Thus, Stucker received a slightly-enhanced sentence, one that currently would represent the minimum possible term for murder. *See* I.C. § 35-50-2-3(a) (2014).

[23] Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[24] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the

---

[4] Although the statute in effect at the time of the crime governs Stucker's sentencing range, we apply the inappropriate appellate standard of review of the sentence even though that standard was not enacted until 2003. *See Williams v. State*, 782 N.E.2d 1039, 1050 n.4 (Ind. Ct. App. 2003).

sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[25] Regarding the nature of the offense, Stucker instigated and carried out an extensive plan to burn Hodge alive while he was trapped in his prison cell in order to avoid paying a drug debt. Being burned alive is undeniably a horrendous manner of death. McDonald remembered hearing Hodge's "God awful" and "blood curdling" screams. Tr. p. 471. This crime was egregious.

[26] As for Stucker's character, there is nothing positive to relate. He was serving a term for two counts of Class B felony armed robbery when he murdered Hodge. After serving that sentence, Stucker accumulated additional felony convictions for Class B felony burglary, Class C felony escape, Class D felony residential entry, Class D felony auto theft, and Class D felony theft. Stucker also has two misdemeanor convictions for possession of marijuana and one for domestic battery. The presentence report also relates two probation violations. Finally, the recorded conversation with the CI reveals a complete lack of remorse on Stucker's part for Hodge's death; if anything, Stucker appears to be proud of

that act.  In light of Stucker's poor character and the heinousness of Hodge's murder, we cannot say that his sentence of forty-five years is inappropriate.

# Conclusion

The trial court did not abuse its discretion in admitting photographs of Hodge's corpse.  There is sufficient evidence to support Stucker's identification as Hodge's killer and to reject his self-defense claim.  Finally, Stucker's forty-five-year sentence is not inappropriate.  We affirm.

Affirmed.

May, J., and Pyle, J., concur.